UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | |
|---|---|
| **OHIO BALLROOM PRODUCTION, LLC** <br> **842 CEDAR WAY** <br> **YOUNGSTOWN, OH 44512** <br><br> Plaintiff, <br><br> v. <br><br> **MAMBO KINGS, INC.** <br> **1107 SOUTH MAIN ST.** <br> **NORTH CANTON, OH 44720** <br><br> and <br><br> **GERALD SATAVA** <br> **1107 SOUTH MAIN ST.** <br> **NORTH CANTON, OH 44720** <br><br> and <br><br> **JENNY-LEE SATAVA** <br> **1107 SOUTH MAIN ST.** <br> **NORTH CANTON, OH 44720** <br><br> Defendants. | CASE NO. _____ <br><br> JUDGE _____ <br><br><br> **VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Ohio Ballroom Production LLC, ("Ohio Ballroom") for its verified complaint against Mambo Kings, Inc. ("Mambo Kings") and Gerald and Jenny-Lee Satava (sometimes collectively "Defendants"), states and alleges the following:

## THE PARTIES

1) Plaintiff Ohio Ballroom is an Ohio limited liability company with its principal place of business at 842 Cedar Way, Youngstown, OH 44512.

2) Defendant Mambo Kings is Ohio corporation with its principal offices at 1107 South Main St., North Canton, OH 44720.

1

3) Defendants Gerald Satava, and Jenny-Lee Satava (the "Satavas") are shareholders in Mambo Kings and are residents of the State of Ohio.

## JURISDICTION AND VENUE

4) This court has jurisdiction pursuant to 28 U.S.C. section 1331 as Ohio Ballroom's claims arise in part under the Lanham act, 15 U.S.C. section 1051 et seq.

5) Personal jurisdiction and venue are proper as the Agreement provides that any lawsuit initiated by Ohio Ballroom is to be brought in the United States District Court nearest to the principal place of business of Ohio Ballroom.

## FACTUAL ALLEGATIONS

### The Sub-Franchise Agreement

6) Non-party FADS USA f/k/a Megadance USA Corp. ("FADS") franchises Fred Astaire Dance Studios ("FADS") throughout the world.  As an important part of its product and branding strategy, FADS has developed and made significant investments in the distinctive appearance and operations of FADS which includes, among other things, identifying the FADS by means of proprietary trademarks, service marks, trade names, logos, photographs, images and other indicia of origin including the service mark "Fred Astaire Franchise Dance Studios™" (the "FADS Marks"). Moreover, FADS has created a unique way of teaching, taking students from first step to an advance performance by using a distinctive and proprietary system that includes a number of different dance levels   In fact, the original curriculum was created by Fred Astaire himself.

7) In 2013, FADS granted Ohio Ballroom the right to grant FADS sub-franchises in the State of Ohio and to use the FADS Marks.

8) In 2015 Ohio Ballroom entered into a sub-franchise agreement (the "Agreement") with the Satavas and G&J Productions, Inc. to operate a Fred Astaire Dance Studio in Canton, Ohio and to

use the FADS Marks. In 2018 the Agreement was assigned by the Satavas and G&J Productions, Inc. to Mambo Kings. The Agreement otherwise remained binding. The Agreement is incorporated by reference and is not attached as it is in excess of 60 pages.

### Defendants Fail to Fund Escrow Account

9) Under Section 6.15 of the Agreement, there is an escrow agreement required by FADS that was established in response to Federal Trade Commission (Modified Order, Docket #8560) (the "FTC Order"). The FTC Order requires, among other things, that studios provide refunds to students for pre-paid lessons that are not taught. The FTC Order further requires that FADS institute a "program of surveillance" to reveal whether studios are meeting these requirements. FADS determined that the best way to ensure compliance was to require escrow accounts, as set forth in Section 6.15 of the Agreement.

10) Defendants have not made the required deposits in the escrow account since 2014.

### Failure to Pay Franchise Fees

11) Section 7 of the Agreement requires Defendants to make regular payments of Franchise Fees. Section 6.2.3 of the Agreement requires Defendants to pay these fees using the "electronic funds transfer systems" required by Ohio Ballroom

12) Defendants were repeatedly informed that Ohio Ballroom would not accept credit card payments from Defendants unless Defendants were willing to pay the associated fees. For certain periods of time, Defendants did not pay such credit card fees or initiate electronic transfer of Franchise Fees. In fact, when Defendant finally did so, they ceased the practice in January 2019.

13) Additionally, even when franchise fees were paid in 2018, the payments were consistently late.

### Failure to Provide Weekly Reporting

14) Section 6.5.9 of the Agreement requires Defendants to submit forms and reports to Ohio Ballroom in the manner and frequency required by Ohio Ballroom. Ohio Ballroom had multiple meetings, conversations, and emails with Defendants explaining the documentation that they were required to submit on a weekly, monthly, and yearly basis.

15) Ohio Ballroom required copies of credit card slips, cash sheets, student agreements, and bank deposit slips (together, "Weekly Reports"). Despite Ohio Ballroom's repeated communications and instructions, Defendants failed to do so.

### Failure to Respond to Audit

16) Section 11.1 of the Agreement requires Defendants to respond to audits initiated by Ohio Ballroom. Defendants did not sufficiently respond to Ohio Ballroom's audit demand.

17) Defendants did provide an audit response on or about July 31, 2019 in which it provided Ohio Ballroom with bank statements for 2018.

18) However, Defendants did not provide: (a) cash sheets for the period from September 2018 through December 2018; (b) credit card slips for all of 2018; (c) bank deposit slips for all of 2018; or (d) fully executed student enrollment agreements for all of 2018. Additionally, Defendants failed to provide any of the above requested documentation for 2017.

### Underpayment of Royalties

19) Even when Defendants did not supply complete financial records as required, there was enough information to show that they were consistently underreporting gross revenues.

### Failure to Meet Dance Lesson Requirements

20) Under Section 2.3 of the agreement, Defendants were required to meet certain gross revenues attributable to the sale of dance lessons.

21) Even when Defendants supplied incomplete records, they were enough to show that Defendants did not meet these requirements on any consistent basis.

### Failure to Maintain Open Hours

22) Under Section 6.5.7 of the Agreement, the studio must be open and in normal operation for a minimum of 45 hours a week. Defendants have failed to do so and upon information and belief, they have kept the studio shuttered for weeks at a time.

### The Sub-Franchise is Terminated

23) Defendants were provided notice of the breaches described in Paragraphs 9 through 20 via letters on February 6, 2019, April 1, 2019 and August 13, 2019. Defendants failed to remedy the foregoing breaches and others and, as a result, the Agreement was terminated on September 12, 2019.

24) Aside from the above, there were any number of other breaches, including but not limited to those described in Paragraphs 21 and 22 and which will be proven at time of trial.

### Failure to Follow Post-Termination Requirement

25) Under the Agreement, there are various post-termination requirements, including the cessation of the use of the FADS proprietary marks, including the removal of the proprietary marks on sites, buildings, fixtures, structures and other changes necessary to distinguish the sub-franchise studio from the FADS system or other FADS sub-franchise. Defendants have failed to do so. See external site photographs attached as Exhibit 2.

### Defendants Unlawfully Compete with Ohio Ballroom

26) In addition to the above and in the event of a termination, Section 12.2 of the Agreement prohibits Defendants from operating a competing dance instruction business for a period of 18

months within 25 miles of the franchised location and within 5 miles of any other Fred Astaire dance studio.

27) Despite the foregoing, Defendants are competing with Ohio Ballroom using the same facility and continue to identify itself as a Fred Astaire dance studio.

28) In addition, and through the use of electronic media, Defendants are planning to or are now operating a competing studio with a new name in the same building that formerly housed the Fred Astaire Dance Studio. See photographs of building and Facebook posts attached as Exhibits A-1 through A-11.

29) Whether Defendants use a new name or not, their use of the studio still runs afoul of the non-compete provision. Furthermore, the Facebook posts above demonstrate that Defendants are trading on the name of FADS.

## COUNT ONE

## BREACH OF CONTRACT

30) Ohio Ballroom realleges paragraphs 1 through 29 of this complaint as if fully set forth.

31) Defendants have breached the Agreement. These breaches and others have damaged Ohio Ballroom by, among other things, failing to:

    a. Fund the escrow account;

    b. Pay franchise fees;

    c. Provide weekly reporting;

    d. Respond to an audit;

    e. Accurately report royalties;

    f. Maintain required hours;

    g. Observe post-termination duties; and

    h. Adhere to the non-competition provisions.

## COUNT TWO

### FALSE REPRESENTATION OF AFFILIATION IN VIOLATION OF THE LANHAM ACT, IS U.S.C. § 1125 (a)(1)

32) Ohio Ballroom realleges paragraphs 1 through 31 of this Complaint as if fully set forth.

33) The FADS marks have been used continuously in connection with the operation of dance studios throughout the country for many years.

34) Defendants are currently offering dance lessons, dance competitions and other dance-related activities using the FADS Marks.

35) These activities are not approved by FADS and do not conform to FADS' brand standards.

36) Defendants' failure to meet FADS brand standards and specifications has resulted in and continues to result in the devaluation of the FADS Marks by tarnishing their image and undermining uniformity across the FADS brand.

37) Furthermore, Defendants' operation of the dance studio in an unauthorized manner creates confusion about the affiliation between Defendants' dance studio and the FADS, and leaves Ohio Ballroom powerless to control and manage the FADS Marks, its brand image and related goodwill.

38) Defendants' conduct described above, and its unauthorized use of the FADS marks, constitute a false representation or affiliation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. Section 1125(a)(1). Defendants' unauthorized use of the FADS marks is likely to cause

confusion, mistake and/or deception in the marketplace as to both the quality and source of the dance activities and falsely suggests that the studio is sponsored or approved by FADS.

39) Unless enjoined by the Court, the Defendants will continue to hold themselves out as a FADS, causing damage, injury and irreparable harm to Ohio Ballroom's business, brand, reputation and goodwill. Ohio Ballroom is therefore entitled to injunctive relief and to monetary recovery pursuant to 15 U.S.C. Section 1117(a) in an amount to be proven at trial.

40) Defendants' infringement of the rights of Ohio Ballroom has been a knowing, willful and in deliberate disregard of the rights of Ohio Ballroom. Ohio Ballroom is therefore entitled to enhanced damages and attorneys' fees under 15 U.S.C. Section 1117(a).

## COUNT THREE

### ON THE PERSONAL GUARANTEES

41) Ohio Ballroom realleges paragraphs 1 through 40 of this Complaint as if fully set forth.

42) Gerald and Jenny-Lee Satava signed personal guarantees making them liable for the debts of Mambo Kings. As such, they are not only responsible as signatories under the Agreement but through their personal guarantees as well.

## COUNT FOUR

### ON THE NONCOMPETE AGREEMENT

43) Ohio Ballroom realleges paragraphs 1 through 42 of this Complaint as if fully set forth.

44) Section 12.2 of the Agreement contains a noncompete provision which prohibits Gerald and Jenny-Lee Satava from operating a dance studio within 25 miles of the Mambo Kings facility or within 5 miles of any company owned FADS facility or any other FADS sub-franchise for a period of 18 months.

45) Defendants are planning to or are now operating a dance studio at the same location under the name "North Canton Ballroom".

## COUNT FIVE

## ATTORNEYS FEES

46) Ohio Ballroom realleges paragraphs 1 through 45 of this Complaint as if fully set forth.

47) Section 19.17 of the Agreement provides that in the event of breach or any violation, attorneys fees, court costs and any other reasonable expenses shall be born by the non-prevailing party.

## PRAYER FOR RELIEF

WHEREFORE, Ohio Ballroom requests:

1) A judgment that Defendants have violated Section 43(a)(1) of the Lanham Act;
2) A preliminary and permanent injunction against Defendants, preventing the continued operation of a studio that falsely identifies itself as having any affiliation with the FADS or its marks;
3) Damages for Defendants' breach of the agreement;
4) Damages, including treble damages, pursuant to 15 U.S.C. Section 1117;
5) Damages for Ohio Ballroom attorneys' fees and costs per section 19.17 of the Agreement;
6) Prejudgment on any monetary award made part of the judgment against Defendants; and
7) Such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Arthur M. Kaufman*
Arthur Kaufman, Esq. (0017724)
**KAUFMAN, DROZDOWSKI & GRENDELL LLC**
29525 Chagrin Boulevard, Suite 250
Pepper Pike, Ohio 44122
Phone: 440.462.6500
Fax: 440.462.6504
ak@kdglegal.com
*Attorney for Plaintiff*

## VERIFICATION

STATE OF NEW YORK

COUNTY OF ROCKLAND

**AFFIDAVIT OF MARINA TARISNOV IN SUPPORT OF VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. I, Marina Tarisnov, a Vice President and Managing Member of Ohio Ballroom Productions, LLC, the Plaintiff herein, being first duly sworn according to law, hereby state that the facts and allegations in the above Verified Complaint are true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT.

_____
Marina Tarisnov

SWORN TO BEFORE ME and subscribed in my presence this 5th day of November, 2019.

_____
Notary Public

My Commission Expires: _____

**SALMAN BARI DAR**
Notary Public State of New York
No. 01DA6076539
Qualified in Rockland County
Commission Expires June 24th, 2022

11